FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2012 MAR -6  P 2: 28

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

S.S., by and through her next friend,
**DONNA STITES**

      Plaintiff,

      v.

**FAIRFAX COUNTY SCHOOL BOARD**

      Defendant.

Civil Action: 1: 12cv 245

CMH/IDD

**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Now comes Plaintiff, S.S.,[1] by and through her next friend, Donna Stites, pursuant to the Federal Rules of Civil Procedure, and for her causes of action against Defendant avers the following:

**I.    INTRODUCTION**

1.     This is a civil rights action under 42 U.S.C. § 1983, the First Amendment, and the Fourteenth Amendment brought to remedy a violation of the constitutional rights of Plaintiff S.S., a student at Thomas Jefferson High School for Science and Technology in Alexandria, Virginia.

2.     Plaintiff brings this action challenging Defendant Fairfax County School Board's ("Board") discrimination against Plaintiff's community service work of teaching/volunteering in a religious program for children at her church's weekly religious meetings.

3.     The Board has adopted a policy governing community service activities by students.

---

[1] Pursuant to the Electronic Case Filing Policies and Procedures, S.S. is identified by her initials, rather than her full name.

1

4.  The community service policy is "intended to instill a sense of civic responsibility by encouraging students to assess their impact on the community as active contributors to society."

5.  Among the community service activities approved by the Board are "working with youth through education and recreation programs" and "tutoring young children."

6.  The Board has also adopted a policy regarding faith-based community service ("Faith-Based Service Policy").

7.  Under the Faith-Based Service Policy, community service must have a "secular purpose" and "may not include preparation or participation in the performance of religious services."

8.  Pursuant to the Board's Faith-Based Service Policy, Doug Cullen, faculty advisor for the Thomas Jefferson National Honor Society, refused to grant S.S. credit for 46.5 hours of religious community service spent "Leading Sunday School" and serving as a "Sunday School Teacher" during the 2010-2011 school year because the work was performed at a religious meeting.

9.  But Mr. Cullen approved the community service hours of other Thomas Jefferson National Honor Society members who performed work such as "mentoring elementary students," "teaching students," "volunteering with children with special needs," "playing with kids," "volunteering at a haunted house," "work[ing] as a Youth Coordinator for [a] charitable organization called Hope for Humanity," "ushering/guiding people," and "childcare."

10. While the national headquarters of National Honor Society grants each local chapter the authority to "develop[] their local guidelines" on what community service hours will be

2

accepted, a memo from the national headquarters states that "nothing prohibits the acceptance of" community service performed at religious meetings, including "teaching a Sunday school class."

11. In fact, according to the memo, "teaching Sunday school at church…may readily fall under the aspect of leadership experiences also required of members. Assuming the responsibility for preparing and presenting lessons and supervising a group of students for an hour would generally be seen as evidence of demonstrated responsibility and leadership skills for an individual student."

12. Despite guidance from the national headquarters allowing S.S.'s religious community service of "Leading Sunday School" and serving as a "Sunday School Teacher" to receive credit, her hours were denied by Mr. Cullen pursuant to the Board's Faith-Based Service Policy.

13. As a result of this denial, Plaintiff has insufficient community service hours to maintain her membership in the Thomas Jefferson National Honor Society

14. Plaintiff was placed on probationary status, required to complete an additional four hours of community service, and warned that failure to remedy the situation may result in her "removal from the [National Honor Society]."

15. Plaintiff challenges the Defendant's Faith-Based Service Policy, both facially and as-applied to her religious community service work.

16. The Defendant's denial of Plaintiff's religious community service, and the Faith-Based Service Policy on which that denial was based, violate the First and Fourteenth Amendments to the United States Constitution.

## II.   JURISDICTION AND VENUE

17. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, under federal law, particularly 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. §§ 1983 and 1988.

18. This Court possesses original jurisdiction over Plaintiff's claims by operation of 28 U.S.C. §§ 1331 and 1343.

19. This Court is vested with authority to issue the requested declaratory relief under 28 U.S.C. § 2201 and 2202, and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

20. This Court has authority to award the requested injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1343(a)(3).

21. This Court is authorized to award nominal damages under 28 U.S.C. § 1343(a)(4).

22. This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

23. Venue is proper under 28 U.S.C. § 1391 in the Eastern District of Virginia because this claim arose there and because the Defendant is located within the Eastern District of Virginia.

## III.   IDENTIFICATION OF THE PLAINTIFF

24. Plaintiff S.S., a minor, is a 12th grade student at Thomas Jefferson High School for Science and Technology.

25. S.S. is a resident of Reston, Virginia.

26. S.S. is an adherent of the Christian faith.

27. S.S., pursuant to her sincerely held religious beliefs, desires to perform community service by volunteering with the children's Sunday School programs at her church's religious meetings, including teaching the children, singing songs, leading educational

and other activities, all from a religious perspective without having her community service work denied or receiving punishment for insufficient hours resulting from the denial.

28. S.S. desires to perform community service at her church for the same reason other students desire to engage in community service with non-profit organizations—to have a positive impact on the community and to fulfill the community service requirements necessary to maintain membership in the Thomas Jefferson National Honor Society.

IV. **IDENTIFICATION OF THE DEFENDANTS**

29. Defendant Fairfax County School Board is organized under the laws of the State of Virginia and may sue and be sued. *Purdham v. Fairfax County Sch. Bd.*, 2009 WL 4730713 (E.D. Va. 2009) *aff'd*, 637 F.3d 421 (4th Cir. 2011).

30. The Board is charged, <u>inter alia</u>, with the administration, operation, and supervision of Thomas Jefferson High School for Science and Technology, a public secondary school.

31. The Board is charged with the formulation, adoption, implementation, and enforcement of Board policies, including the Faith-Based Service Policy challenged herein.

32. The Board is responsible for the enforcement of its Faith-Based Service Policy by its employees.

33. The Board is responsible for the enactment, enforcement, and existence of policies and practices related to student community service activities.

34. The Board denied credit for S.S.'s religious community service hours of "Leading Sunday School" and serving as a "Sunday School Teacher" pursuant to its Faith-Based Service Policy and practice.

35. The Board likewise denied credit for S.S.'s religious community service hours of

"Leading Sunday School" and serving as a "Sunday School Teacher" pursuant to its Faith-Based Service Policy and practice, through implementation by Doug Cullen and the Faculty Committee.

36.   The Board is responsible for the implementation and application by Doug Cullen, the Faculty Committee, and by any other school employees of its Faith-Based Service Policy and practices pertaining to the approval of community service work performed by students.

37.   The Board is similarly responsible for delegating to Doug Cullen, the Faculty Committee, and other school employees final authority as to the approval and denial of community service hours by students, and for the denial of Plaintiff's religious community service work.

V.   ALLEGATIONS OF FACT

THE BOARD'S FAITH-BASED SERVICE POLICY

38.   The Board has set several "Student Achievement Goals" for students within the District.

39.   According to the Board's Student Achievement Goal 3:

> [The Goal] includes a service learning component that allows students to earn hours for their participation in service learning projects. Service learning is a teaching method designed to involve students in authentic and meaningful service to their communities. Service learning makes connections between the classroom and the community and provides structured time for students to reflect on their service experiences. It is intended to instill a sense of civic responsibility by encouraging students to access[sic] their impact on the community as active contributors to society.

(*available at* http://www.fcps.edu/is/servicelearning/.)

40.   One of the elements of the Service Learning requirement is an Opportunity for Reflection by the students. School staff members are instructed to look for "evidence of student

reflection in which the implications of student service are addressed, along with root cause analysis of the issue(s)." (*Available at* http://www.fcps.edu/is/servicelearning/sixelements.shtml.)

41.   The Board's website describes a variety of recommended activities that students can participate in to receive credit for community service. The activities include:

- Working with youth through education and recreation programs
- Working with sick or disabled individuals
- Tutoring young children

(*available at* http://www.fcps.edu/is/servicelearning/opportunities.shtml.)

42.   Students who complete a designated number of community service hours are eligible to receive special recognition at graduation.

43.   For a student graduating in 2012, if the student completes at least thirty hours of community service, she will receive a service learning recognition cord.

44.   If the student completes at least 50 hours of community service, she will qualify for the Virginia Board of Education diploma seal for excellence in civics education.

45.   But the Board has in place a Faith-Based Service Policy that prohibits credit for community service performed at religious meetings.

46.   The Faith-Based Service Policy states:

> Students may choose to participate in faith-based or civic or politically related services. For faith-based services, the activity must have **a secular purpose** and be based on a recognized need in the community. Activities must affect individuals beyond the immediate religious community and **may not include preparation or participation in the performance of religious services**.

(*available at* http://www.fcps.edu/is/servicelearning/) (emphasis added).

### THE THOMAS JEFFERSON NATIONAL HONOR SOCIETY'S SERVICE REQUIREMENTS

47.   Thomas Jefferson High School for Science and Technology ("High School") is under the

7

direction of the Board and includes ninth through twelfth grade.

48.   The High School hosts a chapter of the National Honor Society.

49.   Students who are accepted as members of the Thomas Jefferson National Honor Society ("TJNHS") must meet certain requirements to maintain their membership in the organization.

50.   One of the requirements is that each member of TJNHS must complete six (6) hours of community service work per semester.

51.   TJNHS provides its members with guidelines for determining what community service work counts towards fulfilling the six hour requirement. (*See* http://www.tjhsst.edu/studentlife/activ/nhs/mod/page/view.php?id=13.)

52.   The first TJNHS guideline listed is the Board's Faith-Based Service Policy.

53.   As a result, all community service hours performed by TJNHS members are subject to approval pursuant to the Board's Faith-Based Service Policy.

54.   In accordance with the Board's Faith-Based Service Policy, the TJNHS guidelines state:

> **Any service that is rendered as part of a religious or liturgical ceremony, while commendable, will not count.** The Challenger Chapter would like to encourage service to the wider community.
>
> Clarification: Playing music at the institution, setting up or cleaning up the facilities, **Sunday school teaching**, preparing food or facilities for a religious service or celebration – **all of these do not count.** If in doubt, please ask before a deadline.

55.   Membership in the National Honor Society affords a student several irreplaceable benefits, including:

   A.   Access to national scholarship programs that recognize students for their leadership and scholarship achievements, with scholarship amounts of up to $13,000;

8

B.     Access to state and national award programs, such as the President's Education Award, the Prudential Spirit of Community Awards, and the NASSP/Herff Jones Principal's Leadership Awards, involving scholarships and cash awards of tens of thousands of dollars;

C.     Attending the LEAD Conference where attendees network, learn leadership skills, and gain valuable experience;

D.     Listing membership in the National Honor Society on college and graduate school applications, an honor that many elite universities look for in their applicants; and

E.     Participating in chapter activities that provide students the opportunity to cultivate their leadership, service, and character within themselves, their schools, and their communities.

### PLAINTIFF S.S.'S RELIGIOUS COMMUNITY SERVICE WORK

56.     S.S. volunteers as a worker in her church's Sunday School program for children known as Kids Quest.

57.     Kids Quest takes place during the regular worship services at S.S.'s church.

58.     Kids Quest is open to children of all ages.

59.     It is open both to members of the church and to children from the community.

60.     Each week at Kids Quest, S.S. assists in a variety of activities with the children who attend, including:

A.     fun games and activities to build relationships with the children,

B.     singing religious songs,

C.     teaching children Bible lessons through the use of drama and multi-media, and

D.     working on craft projects with the children.

61. As a volunteer in the Kids Quest Sunday School program, S.S. also provides mentoring and guidance to children from different nationalities, children with behavioral problems, children with special needs, and children in abusive family situations.

62. S.S. is a Bible-believing Christian who desires to express her faith and beliefs by volunteering to work with children in her church's Kids Quest Sunday School Program.

63. The time S.S. spends volunteering in her church's Kids Quest Sunday School Program precludes her from volunteering for other types of community service.

64. In the future, S.S. desires to continue to volunteer in the Kids Quest Sunday School program at her church and in other opportunities for community service at her church absent fear of reprisal and without being denied credit for the community service work she performs during her church's religious meetings.

### THE DENIAL OF CREDIT TO PLAINTIFF S.S. FOR HER RELIGIOUS COMMUNITY SERVICE WORK

65. At the beginning of her junior year at the High School, S.S. was invited to become a member of the TJNHS.

66. As required by TJNHS policy, S.S. reported the community service work she performed each semester.

67. On February 1, 2011, S.S. reported that she had completed 18.5 hours of community service work during the Fall 2010 semester.

68. S.S. identified her volunteer work with the Kids Quest Sunday School program as "Sunday School Teacher."

69. She described the volunteer work as "I teach lessons, prepared snacks, supervised play, etc."

70. On May 26, 2011, S.S. reported 28 hours of community service during the Spring 2011 semester.

71.  She identified her volunteer work with the Kids Quest Sunday School program as "Leading Sunday School."

72.  She described her volunteer work as "I work an hour a week at the 10:45 service at my church. I serve snack, preside over crafts, control crowds and greet the children (3-4 year olds)."

73.  During the Fall of 2011, Mr. Doug Cullen, teacher at the High School and faculty advisor for TJNHS, informed S.S. that she had insufficient hours of community service work to maintain her membership in TJNHS.

74.  Mr. Cullen told S.S. that the 46.5 hours of community service work she performed by working with the Kids Quest Sunday School program during the religious meetings at her church could not count towards the 12 hours of community service required of TJNHS members.

75.  On October 21, 2011, Mr. Cullen sent an e-mail to S.S. stating:

>  Dear [S.S.],
>  This is your final notice that there was a problem with your NHS and that with out [sic] a properly completed form your name will not be forwarded to the Faculty Counsel for consideration.

76.  On October 21, 2011, S.S. responded to Mr. Cullen:

>  My volunteering with my church does not fulfill a spiritual obligation [it is not mandated by her church] and I am not using those hours for another society. I don't think NHS should discriminate on types of service. Would you please reconsider my hours?

77.  On October 25, 2011, Mr. Cullen wrote S.S. back, stating that:

>  You may write a letter of explanation that I will forward to the Faculty Committee. The Faculty committee makes all selections for membership.
>
>  Please remember that we do have guidelines for which types of service we accept for NHS service. That list does not include all types of service event [sic] though it may be commendable.

78.     On October 29, 2011, S.S. again wrote to Mr. Cullen asking him to reconsider the refusal

to grant credit for her community service performed at her church:

> I understand that NHS has developed guidelines for types of service and I
> understand why you do not allow "double dipping" [using the hours for
> credit in another society or club]. However, I am at a loss to understand
> why NHS has chosen to discriminate against certain types of volunteer
> work. I would think that the goal of NHS is to encourage scholarship,
> leadership, and service. It should be up to the individual to determine
> where his or her interests lie for service.

> In my case, I have been volunteering with Kids Quest for five years. I am
> not doing this to fulfill any obligation with my church or to fulfill
> requirements with NHS. I do it because I want to help children. NHS
> required only 6 hours of service; I gave 18 hours.

> Whether or not NHS accepts my service, I will continue to volunteer with
> Kids Quest because that is where I feel I should serve. I would like to be a
> part of NHS and feel that I could contribute to the organization. However,
> if TJ's chapter of NHS continues to discriminate on types of service then
> unfortunately I will not be able to participate.

> I truly hope that you reconsider your policy of discriminating against
> certain types of service and allow all non profit activity to qualify.

79.     Concerned about the refusal to grant credit for S.S.'s many hours of community service,

S.S.'s father, Rob Stites, contacted the headquarters of the National Honor Society to

inquire whether community service performed during a religious meeting could be

accepted to fulfill National Honor Society community service hours.

80.     A representative from the headquarters of the National Honor Society provided Mr. Stites

a document answering the question "Can activities done for a religious group be counted

as service hours for members completing their NHS or NJHS chapter service

requirements?"

81.     The document first emphasizes that it is the duty of each chapter to "develop[] their local

guidelines—a responsibility granted to all chapters by the national organization."

82.   The document continues:

> Would teaching a Sunday school class fulfill a need in the community'?
> One can argue on both sides of this question, taking into consideration
> spiritual needs alongside those focusing on food, clothing, and shelter. If
> the fulfillment of spiritual needs is an acceptable purpose in a given
> school's community, **nothing prohibits the acceptance of such hours**.
>
> ...
>
> One must note that while teaching Sunday school at church may be
> considered for exclusion for service hours, it may readily fall under the
> aspect of leadership experiences also required of members. **Assuming the
> responsibility for preparing and presenting lessons and supervising a
> group of students for an hour would generally be seen as evidence of
> demonstrated responsibility and leadership skills for an individual
> student.**

(Emphasis added.)

83.   After reviewing the document from the National Honor Society, Mr. Stites sent an e-mail

to Mr. Cullen on November 4, 2011 to provide him with a copy of the document showing

that S.S.'s religious community service work can be accepted:

> I took the initiative to contact an acquaintance who works at the NASSP
> which houses the national headquarters of NHS here in Reston. They
> provided a "Religious Service Q&A" that is intended to help schools make
> these policy decisions. I have attached it for your review (you of course
> may already have it). Certainly a balance of service hours in different
> situations is a good learning experience, but voluntary service in a
> religious community should be accepted and can be coordinated with the
> NHS in an overall student plan. Perhaps input from a wider range of
> religious community members and the NHS office at the NASSP may help
> improve the policy. My contact at the national NHS office expressed their
> willingness to work with you on this topic if needed.

84.   On November 4, 2011, Mr. Cullen responded to Mr. Stites via e-mail:

> Mr Stites, Thank you for your feedback. In [S.S.]'s case, the question
> about the nature of her service was primarily due to our not understanding
> the nature of her service. **Once I spoke to [S.S.] in person it was clear
> that her service was beyond that which might be considered a form of
> devotional or obligatory service.**
>
> ....
>
> I also recognize that there may be different opinions on whether service
> rendered in a religious setting should be counted towards NHS service.
> Most often this disagreement centers around the idea of an obligatory

service. Many activities that occur within a religious setting might be seen as voluntary at the level of the individual and yet someone must do them in order for the community to function. Often these activities might be associated with a liturgical service. For instance there may not be an obligation for Joe to serve as an usher or alter boy yet there is an obligation for someone to fulfill that role. Many members of congregations may volunteer to play music during the service. Again there is not an individual obligation to play for the service but if music is part of your liturgical tradition then the community might consider it an obligation. With over 700 members submitting 1000's of service reports a year, it can become overwhelming trying to determine whether service rendered in a religious setting would be voluntary or obligatory. **Generally I would consider volunteer service rendered outside of those that occur as part of liturgical service as valid for NHS service.**

(Emphasis added.)

85. On December 6, 2011, S.S. received a letter from Mr. Cullen informing her that she had not completed the required number of community service hours and placing S.S. on probation.

86. The letter stated:

When you were inducted into the Challenger Chapter of the National Honor Society, you pledged continue to serve the community. It pains me to see your name among a few that don't appear to have submitted the requisite number of hours for last year. The officers have told me that they notified you about your deficit via email but you have not corrected your record. Nobody wants to take harsh action to discipline NHS members but it may become necessary. **We now considered [sic] you to be on a probationary status. Should we not hear from you prior to the winter vacation, we may refer your name to the faculty council to be considered for removal from the NHS.**

It we have made an error in calculating hours or if you have perhaps been remiss in reporting your service, would you please bring your records to me so that we can resolve any differences? If you are indeed remiss in your service hours and would like to regain your member in good standing status, please submit to me a written plan of how you will resolve your deficit. **Due to large hours deficit we have assigned you 4 additional hours as a penalty.**

> Should you feel that you are not able to meet you service obligations, you
> may resign from the NHS but submitting the letter on the back signed by
> both you and your parents.

(Emphasis added.)

87. Upon receiving this letter, S.S. and her parents contacted Mr. Cullen seeking an explanation as to why S.S.'s community service work at her church was now being denied credit.

88. On December 10, 2011, Mr. Stites sent Mr. Cullen and e-mail stating in part: "You can see from this that we believe that [S.S.'s] service is considered acceptable to your NHS chapter and should be counted. We are at a loss to understand why her service hours are now not acceptable. Would you please clarify this again?"

89. That same day, Mr. Cullen responded and reaffirmed that S.S.'s hours for community service performed during her church's religious meetings would not received credit.

[S.S.] and Mister Stites. I can see the root of the problem. Here are [S.S.'s] submissions to NHS

| 2/1/2011 | 1st Semester Out of School | 18.5 | Sunday School Teacher | I teach leassons, prepared snacks, supervised play, etc. |
|---|---|---|---|---|
| 5/26/2011 | 2nd Semester Out of School | 28.0 | Leading Sunday School | I work an an hour a week at the 10:45 service at my church. I serve snack, preside over crafts, control crowds and greet the children (3-4 year olds). |

...These 2 items clearly fall outside our guidelines. When we last visited this situation, [S.S.] explained that she also volunteers for a program called Kids Quest. "In my case, I have been volunteering with Kids Quest for five years. I am not doing this to fulfill any obligation with my church or to fulfill requirements with NHS. I do it because I want to help children. NHS required only 6 hours of service; I gave 18 hours." [S.S.] explained that the Kids quest is a program offered to the entire community and is separated from Sunday Service/Sunday School and her service was not

15

> during church services. As such it does meet our guidelines. We did not
> grant an exemption, but rather considered her explanation of service with
> Kids Quest. I am confused as to why [S.S.] continues to submit hours that
> she knows are not within our guidelines if she could submit her hours for
> Kidsquest.

90.    Despite Mr. Cullen's statements to the contrary, S.S.'s description of her reported hours

had not changed.

91.    Rather, when asked to provide more details on her religious community service, she

informed Mr. Cullen that the Sunday School program she volunteers with is known as

Kids Quest and that she does not do it out of any affirmative obligation of her church.

92.    Thus, on December 11, 2011, S.S. sent a letter to Mr. Cullen restating what she had

previously told him about her volunteer work in the Kids Quest Sunday School program.

93.    The e-mail stated:

Mr. Cullen,

> Let me clarify. Kids Quest is open to anyone in the community. In fact,
> most attendees are not members of the church. **I never said that it was
> separate from Sunday school or that it didn't occur during the church
> service.** What I do is difficult - I have worked with a child with an abusive
> father, I've worked with out of control children, and I've worked with
> special needs children. We have children from all nationalities, It is
> definitely tiring and there is no church rule requiring me to do what I do.
> The only command comes directly from Jesus - Christians are to help
> people around them and serve each other.
> ...
> I have been helping in Kids Quest ever since I was ten - way before I
> qualified for NHS. What is more, I plan to continue to help in the
> community after high school. It bothers me greatly that NHS seems to
> encourage students to do community service for 2 years just so they can
> qualify for NHS and have more to add to their college applications rather
> than continue to help the community for a lifetime.
>
> NHS should not be discriminating against certain types of service.
> Students should simply be encouraged to volunteer with any non-profit
> organization. I would appreciate your considering accepting my hours.

(Emphasis added.)

94. On December 11, 2011, Mr. Cullen responded and reaffirmed that S.S.'s religious community service would not be recognized as long as she continued to state that it was performed at a religious meeting.

95. The e-mail stated:

> **IF you would refrain from using the phrase "Sunday School Teacher" or Leading Sunday" and replace it with something more in tune with your service such as "Volunteer leader for Kids Quest" then I think you will have no issues.** There seems to be more than a small difference between what you describe and the description you provide in your submission. Are you simply being difficult to make a point? You were aware of our bylaws when you asked to be considered to membership. **Our bylaws with regard to Sunday school teaching are identical to those FCPS has adopted for service learning.** The Chapter is not making a value judgement [sic] on your service, in fact I applaud your service. **We are simply requesting that you perform service that is consistent with our guidelines.**

(Emphasis added.)

96. Thus, Mr. Cullen affirmed that the denial of S.S.'s religious community service was based upon the Faith-Based Service Policy that "[Fairfax County Public Schools] has adopted for service learning."

97. Following the directions of Mr. Cullen, who is required to comply with the Board's Faith-Based Service Policy when approving students' community service hours, S.S. submitted her community service hours for the Fall 2011 semester.

98. Her community service work for Fall 2011 consisted of 24 hours of volunteering with the Kids Quest Sunday School program at her church. She performed the same types of activities that she had previously described to Mr. Cullen and had listed on her submissions to TJNHS: teaching lessons, preparing snacks, supervising playtime, all during the 10:45 service at her church.

99. S.S. was placed in the dilemma of either self-censoring her speech by concealing the fact

that her work was performed as a part of a religious meeting—as she was instructed to do by Mr. Cullen—or facing expulsion from the National Honor Society and losing the irreplaceable benefits that come from membership in the organization.

100. As she was instructed to do by Mr. Cullen to avoid triggering the restrictions of the Board's Faith-Based Service Policy, S.S. self-censored her expression by describing her religious community service as "Teaching in Kids Quest" rather than "Sunday School Teacher" or "Leading Sunday School," thus removing any reference to her community service being performed as part of a religious meeting.

101. Because of this self-censorship, S.S.'s 24 hours of community service for the Fall 2011 semester were approved.

102. However, the 46.5 hours of religious community service that S.S. performed during the Fall of 2010 and Spring of 2011 remain denied because the description accurately states that the service was performed at a religious meeting.

103. S.S. remains on probation with the TJNHS.

104. In addition to the 12 hours of service she must make-up for the 2010-2011 school year, she has been penalized by being required to perform an additional 4 hours of community service.

105. Because of her probationary status, S.S. has been denied the opportunity to apply for National Honor Society scholarships.

106. Although she reported more than enough community service hours, those hours which she accurately identifies as being performed at a religious meeting remain denied pursuant to the Board's Faith-Based Service Policy.

## VI.   ALLEGATIONS OF LAW

107.   Students do not shed their constitutional rights at the schoolhouse gate.

108.   Non-disruptive, private student expression is protected by the First Amendment.

109.   Private speakers are entitled to equal, viewpoint neutral access to public fora.

110.   Religious speech is fully protected by the First Amendment.

111.   Expressive activity is likewise fully protected by the First Amendment

112.   Prior restraints on expressive activity may not delegate overly broad discretion to government decision-makers, may not allow for content based restrictions, and must be narrowly tailored to serve a compelling governmental interest.

113.   The government may not discriminate against expressive activity based on its viewpoint, regardless of the forum.

114.   Content-based restrictions on expressive activity in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

115.   All of the acts of the Board, its officers, agents, employees, and servants were executed and are continuing to be executed by the Board under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Virginia.

116.   Plaintiff is suffering irreparable harm from the conduct of the Board.

117.   Plaintiff has no adequate or speedy remedy at law to correct or redress the deprivation of her rights by the Board.

118.   Unless the Board Faith-Based Service Policy is enjoined, Plaintiff will continue to suffer irreparable injury.

119.   Plaintiff and other like-minded students continue to desire to receive credit for the performance of community service work as part of a religious meeting.

**FIRST CAUSE OF ACTION: VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

120. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 119 of this Complaint.

121. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits censorship of religious expression.

122. The Board's Student Achievement Goal III recognizes the expressive elements of community service work by students.

123. Achievement Goal III states that "it is intended to instill a sense of civic responsibility by encouraging students to access[sic] their impact on the community as active contributors to society."

124. Furthermore, students engaging in community service communicate their support for the mission, values, and goals of the organizations that the students choose to associate with by performing community service.

125. The Board's Student Achievement Goal III allows students to receive community service credit for "a variety of activities."

126. Among the non-exhaustive list of activities identified by the Board are:

    A. Working with youth through education and recreation programs;

    B. Working with sick or disabled individuals;

    C. Preparing and serving food for others; and

    D. Tutoring young children.

127. S.S.'s community service work involves working with youth through education and recreation programs, working with disabled youth, preparing and serving food for youth,

and tutoring young children, all from a religious perspective and as part of a religious meeting.

128. Pursuant to the Board's Faith-Based Service Policy and practice, the TJNHS grants credit to its student members for community service work in fulfillment of its community service requirement.

129. But the Board's Faith-Based Service Policy and practice deny credit to S.S. for community service work performed at her church's weekly religious services.

130. This unequal treatment of S.S. religious community service work is a content-based restriction in an otherwise open fora.

131. Pursuant to the Board's Faith-Based-Service Policy and practice, the TJNHS has approved credit for community service work such as mentoring elementary students, teaching, singing for the elderly, supervising kids, playing with kids, preparing food, working with children with special needs, ushering/guiding people, and childcare.

132. S.S.'s community service work likewise involves mentoring and teaching kids, organizing play time and interacting with the children, singing, supervising kids, ushering/guiding kids to the Kids Quest Sunday School program, and providing childcare, all from a religious perspective and as part of a religious meeting.

133. But the Board's Faith-Based Service Policy and practice discriminate against S.S.'s religious community service by denying her credit for her community service work performed from a religious perspective and as part of a religious meeting.

134. This denial of S.S.'s religious community service while approving credit for similar secular community service work performed by other students, also constitutes viewpoint discrimination, which is unconstitutional in any type of forum.

135. The Board's Faith-Based Service Policy, which requires that community service "have a secular purpose and be based on a recognized need in the community," is both content-based and viewpoint-based on its face due to its denial of community service performed for a religious purpose or performed as part of a religious meeting.

136. The Board's Faith-Based Service Policy, which requires that "activities must affect individuals beyond the immediate religious community and may not include preparation or participation in the performance of religious services," is also content-based and viewpoint-based on its face due to its denial of community service performed for individuals that are part of a religious community or performed as part of a religious meeting.

137. S.S.'s religious community service does not materially and substantially interfere with the orderly conduct of educational activity within the school.

138. The Board's Faith-Based Service Policy and practice additionally impose an unconstitutional prior restraint because they vest school officials with unbridled discretion to permit or refuse to grant credit for religious community service.

139. The Board's Faith-Based Service Policy and practice allow school officials to act with unbridled discretion when deciding if a student's community service has a "secular purpose," if it is "based on a recognized need in the community," if it "affect[s] individuals beyond the immediate religious community," and if it involves "preparation or participation in the performance of religious services."

140. The Board's Faith-Based Service Policy and practice further give school officials unbridled discretion to deny credit to religious community service while granting credit for similar types of secular community service.

22

141. The Board's Faith-Based Service Policy and practice subjects all community service work to the unbridled discretion of school officials.

142. The Board's Faith-Based Service Policy and practice are additionally overbroad because they sweep within their ambit protected First Amendment expression.

143. The overbreadth of the Board's Policy and practice chill the speech of students who seek to engage in community service performed for a religious purpose or at a religious meeting.

144. The Board's Faith-Based Service Policy and practice chill, deter, and restrict Plaintiff from freely engaging in expressive religious community service.

145. The Board's Faith-Based Service Policy and practice, as interpreted and applied by school officials to prohibit religious community service, are not the least restrictive means necessary to serve any compelling interest which the Board thereby seeks to secure.

146. The Board's Faith-Based Service Policy and practice are not reasonably related to any legitimate pedagogical concerns.

147. Censoring students' religious community service per se is not and cannot be a legitimate pedagogical concern.

148. The Board's Faith-Based Service Policy and practice, both facially and as applied, accordingly violate Plaintiff's right to Free Speech as guaranteed by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

**SECOND CAUSE OF ACTION: VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

149. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 119 of this Complaint.

150. The Board's Faith-Based Service Policy and practice, by expressly targeting S.S.'s private religious community service for special disabilities because it is religious, violate S.S.'s constitutional right to the free exercise of religion.

151. S.S. desires to engage in the expressive activities described above on the basis of her sincerely held religious beliefs.

152. The Board's Faith-Based Service Policy and practice exclude – and thus discriminate against – religious community service.

153. The Board's Faith-Based Service Policy and practice substantially burden S.S.'s free exercise of religion by conditioning her ability to receive credit for community service and maintain membership in the TJNHS on foregoing her free exercise rights.

154. The Board's Faith-Based Service Policy and practice force S.S. to choose between engaging in religious community service and being denied credit, or foregoing the free exercise of religion to be able to receive credit for community service without censorship or punishment.

155. The Board's Faith-Based Service Policy and practice substantially burden S.S.'s free exercise of religion by denying her the right to receive credit for religious community service.

156. The Board's Faith-Based Service Policy and practice constitute the imposition of special disabilities on S.S. due to her religion and her intent to engage in religious community service.

24

157.   The Board's Faith Based Service Policy and practice target religious expression, like S.S.'s religious community service, for exclusion.

158.   The Board's Faith-Based Service Policy and practice of banning S.S.'s religious community service selectively imposes a burden on expression based on the religious nature of the expression by singling out her expression for discriminatory treatment.

159.   The Board's Faith-Based Service Policy is not neutral and is not generally applicable.

160.   The Board's Faith-Based Service Policy and practice cannot be justified by a compelling governmental interest and are not narrowly tailored to advance any such interest.

161.   The Board's interpretation and application of its Faith-Based Service Policy chill S.S.'s freedom of religious expression and exercise, both of which are fundamental rights guaranteed to Plaintiff by the First Amendment.

162.   The Board's Faith-Based Service Policy and practice, both facially and as applied, constitute an excessive burden on S.S.'s rights to freedom of exercise of her religion and have violated the Free Exercise Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## THIRD CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

163.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 119 of this Complaint.

164.   The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring expression pursuant to vague or overbroad standards that grant unbridled discretion.

165. The determination by the school officials of what is and is not forbidden religious community service violates this norm.

166. The Board's Faith-Based Service Policy and practice are vague and allow for unbridled discretion in determining which student community service satisfies its Faith-Based Service Policy.

167. The Board's Faith-Based Service Policy and practice allow school officials to act with unbridled discretion when deciding if a student's community service has a "secular purpose," is "based on a recognized need in the community," "affects[s] individuals beyond the immediate religious community," or "include[s] preparation or participation in the performance of religious services."

168. The discretion given to school officials in the Board's Policy leaves censorship of student speech to the whim of school officials.

169. The Board's Faith-Based Service Policy and practice, both facially and as applied, accordingly violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## FOURTH CAUSE OF ACTION: VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

170. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 119 of this Complaint.

171. The Board's Faith-Based Service Policy and practice embody hostility toward religious expression and require excessive entanglement with religion, both forbidden under the First Amendment's Establishment Clause, incorporated and made applicable to the states

by the Fourteenth Amendment to the United States Constitution.

172. The Board's Faith-Based Service Policy and practice of denying approval for S.S.'s religious community service evinces discriminatory suppression of private expression that is not neutral, but rather is hostile toward religion.

173. The Board, pursuant to its Faith-Based Service Policy and practice of suppressing private religious community service sends the message to students that religious speakers such as S.S. are second-class citizens, outsiders, and not full members of the academic community.

174. The Board sends the message that people of faith like S.S. are outsiders by excluding religious community service while concurrently permitting all other secular community service performed by students

175. The Board's Faith-Based Service Policy and practice compel school officials to classify private student expression according to its perceived religious-versus-secular nature and purpose.

176. Drawing this distinction necessarily requires school officials to inquire into the significance of words and practices to different religious faiths.

177. Such inquiries by school officials entangle them with religion in a manner forbidden by the First Amendment.

178. Entanglement problems exist because school officials must attempt to discern which private student community service is too religious in nature to be permitted.

179. School officials must make theological interpretations in order to conclude that some student community service is religious, while other student community service is not.

180. The Board denied S.S. credit for her community service because it was performed as part

of a religious meeting for a religious purpose, an action that represents the antithesis of neutrality.

181. No compelling state interest exists to justify the denial of S.S.'s religious community service.

182. The Board's Faith-Based Service Policy and practice therefore violate the Establishment Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## FIFTH CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

183. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 119 of this Complaint.

184. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons and groups equally.

185. Pursuant to its Faith-Based Service Policy and practice, the Board has granted credit to other similarly situated students who performed community service by working with children.

186. The Board has treated S.S. disparately when compared to similarly situated students by banning only S.S.'s religious community service.

187. By discriminating against the content and viewpoint of S.S.'s community service work, the Board is treating S.S.'s religious community service work differently than other similarly situated public school students.

188. The Board's Faith-Based Service Policy and practice violate various fundamental rights of S.S., such as rights of free speech and free exercise of religion.

189. When government regulations, like the Board's Faith-Based Service Policy and practice challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

190. The Board's Faith-Based Service Policy and practice have been applied here to intentionally discriminate against S.S.'s rights of free speech and free exercise of religion.

191. The Board lacks a rational or compelling state interest for such disparate treatment of S.S.

192. The Board's Faith-Based Service Policy and practice are not narrowly tailored as applied to S.S. because her community service work does not implicate any of the interests the Board might have.

193. The Board's Faith-Based Service Policy and practice are overinclusive because they prohibit S.S.'s religious community service work even though it is not disruptive.

194. The Board's Faith-Based Service Policy and practice burden more of S.S.'s speech than necessary because she is foreclosed from expressing religious content and viewpoints through the performance of community service work at her church's religious meetings even though it is not disruptive.

195. The Board's Faith-Based Service Policy and practice, both facially and as applied, thus violate S.S.'s right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

a. That this Court issue a Preliminary and Permanent Injunction, restraining the

Board, its officers, agents, employees, and all other persons acting in active concert with it, from enforcing the Faith-Based Service Policy challenged herein that violate S.S's constitutional rights by banning religious community service performed at a religious meeting;

b.  That this Court render a Declaratory Judgment, declaring as unconstitutional facially and as-applied the Board's Faith-Based Service Policy and practice challenged herein that ban religious community service performed at a religious meeting in violation of the First and Fourteenth Amendments to the United States Constitution;

c.  That this Court order that S.S.'s official school record and transcript be expunged of any negative information related to the denial of her religious community service by the Board;

d.  That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment;

e.  That this Court retain jurisdiction of this matter for the purpose of enforcing any Orders;

f.  That the Court award S.S.'s costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988.

g.  That this Court award nominal damages for the violation of S.S.'s constitutional rights;

h.  That this Court issue the requested injunctive relief without a condition of bond or other security being required of S.S.; and

i.     That the Court grant such other and further relief as the Court deems equitable and just in the circumstances.

Dated this 6th day of March, 2012.

David A. Cortman, Esq. (GA #188810)*
J. Matthew Sharp, Esq. (GA #607842)*
Alliance Defense Fund
1000 Hurricane Shoals Rd. NE, Suite D1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 Fax
dcortman@telladf.org
msharp@telladf.org

Jordan W. Lorence (VSB #33655)
Alliance Defense Fund
801 G. Street, N.W., Suite 509
Washington, D.C., 20001
(202) 393-8690
(202) 347-3622
jlorence@telladf.org

Jeremy D. Tedesco, Esq. (AZ #023497)*
Alliance Defense Fund
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jtedesco@telladf.org
*Application for Admission Pro Hac Vice
Filed Concurrently

Timothy Bosson, Esq. (VSB #72746)
Simms Showers, LLP
305 Harrison St. SE Third Floor
Leesburg, Va. 20175
(703) 771-4671
(703) 771-4681 (fax)
tpb@simmsshowerslaw.com
*Local Counsel*

*Attorneys for Plaintiff S.S.*

31

**VERIFICATION**

I, S.S.,  a citizen of the United States and a resident of the State of Virginia, have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _27th_ day of _February_, 20 _12_.

_S.S._
_____
S.S.